**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

ARTHUR J. NONNEMAN                                                                CASE NO. 11-51775
KATHLEEN ANNE NONNEMAN

DEBTORS

ARTHUR J. NONNEMAN                                                                PLAINTIFFS
KATHLEEN ANNE NONNEMAN

V.                                                                                              ADV. CASE NO. 11-5073

DALLAS L. MURPHY, JR., ET AL.                                              DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on cross-motions for summary judgment. The issues before the Court are (1) whether the Defendants Dallas and Cheryl Murphy and Kent and Cheryl Mays (collectively the "Defendants") entered into an enforceable contract with the Plaintiffs Arthur and Kathleen Nonneman (collectively the "Nonnemans"); (2) if so, the nature of the parties' obligations pursuant to that contract; and (3) whether the Defendants' obligations under that contract were extinguished by a subsequent novation.

The parties agree that there are no genuine issues of material fact related to these issues. For the reasons stated more fully below, the Court finds based on the plain language of the written contract, the Plaintiffs and Defendants entered into an enforceable promissory note (the "Nonneman Note") whereby the Murphys promised to pay $2,500,000.00 to the Nonnemans in consideration for the Nonnemans' aid in obtaining a business loan to inure to the benefit of Mr. Murphy's business and the Mays guaranteed the Murphys' obligation to the Nonnemans. The Court also finds the obligations under the Nonneman Note were not extinguished by a subsequent novation and the Defendants failed to pay the Nonneman Note in full when the Note matured.

1

The Court further holds that because these findings only resolve the Defendants' liability for breach of contract pursuant to the Nonneman Note, and genuine issues of material fact remain as to the total amount of damages due under the Note, the Court shall deny the Defendants Kent and Cheryl Mays' Motion for Summary Judgment and grant the Nonnemans' Motion for Summary Judgment in part only as to the Nonnemans' breach of contract claim.

**Facts**

The parties have agreed that the following facts are undisputed. Dallas Murphy is the 100% owner of a development business, MSC Management, LLC ("MSC Management"). As part of an effort by Mr. Murphy and MSC Management to purchase, develop and improve 47.5 acres of real property in Nicholasville, Jessamine County, Kentucky (the "Real Property"), Mr. Murphy, and his wife, Cheryl Murphy, approached Mrs. Murphy's parents, the Nonnemans, for help in securing financing. Neither Mr. Murphy nor MSC Management had sufficient credit to obtain the necessary financing, thus Mr. Murphy asked the Nonnemans to seek a $2,500,000.00 loan from Town Square Bank ("TSB") on Mr. Murphy and MSC Management's behalf.

The Nonnemans agreed and on November 25, 2005, they executed and delivered a promissory note to TSB (the "TSB Note") for a $2,500,000.00 business loan. The TSB Note had an interest rate of 7.75% and required the Plaintiffs to make quarterly interest-only payments until maturity, November 28, 2007, when a balloon payment of all outstanding principal and accrued unpaid interest was due. Neither MSC Management nor Mr. Murphy signed as guarantors on the TSB Note, but MSC Management granted a mortgage to TSB (the "TSB Mortgage") on the Real Property to secure the TSB Note. The loan proceeds were then delivered to MSC Management. The TSB Note and Mortgage are hereafter referred to as the "TSB Loan."

Also on November 25, 2005, to provide the Nonnemans some protection for their personal liability on the TSB Loan, the Murphys executed and delivered a "Promissory Note" to the Nonnemans (the "Nonneman Note") wherein the Murphys agreed as follows:

> FOR VALUE RECEIVED, the undersigned hereby jointly and severally promise to pay to the order of Art & Kathy Nonneman & Town Square Bank, the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00), together with interest thereon at the rate of <u>= to Bank</u> % per annum on the unpaid balance. Said sum shall be paid in the manner following: <u>Terms and conditions to exactly match those of Nonneman's (Town Square Bank Note) matching the above date</u>.

The "Promissory Note" provided payments to be applied first to interest, the balance to principal, and set forth conditions for default under the Note. The Nonneman Note further incorporated other provisions of the TSB Note, such as imposing late payments "<u>equal to Bank</u> %." The Nonneman Note also provided:

> The undersigned and all other parties to this note, whether as endorsers, guarantors or sureties, agree to remain fully bound hereunder until this note shall be fully paid and waive demand, presentment, and protest and all other notices thereto and further agree to remain bound, notwithstanding any extension, renewal, modification, waiver, or other indulgence by any holder or upon the discharge or release of any obligor hereunder or to this note, or upon the exchange, substitution, or release of any collateral granted as security for this note.

The last line of the Nonneman Note on page one of two finally stated that "the undersigned hereby execute this note as principals and not as sureties." Page two followed with the signatures of Dallas and Cheryl Murphy as "Borrower."

Following the Murphys' signatures on page two of the Nonneman Note is a separate section labeled "Guaranty." Under this heading is the following language:

> We the undersigned jointly and severally guaranty the prompt and punctual payment of all moneys due under the aforesaid note and agree to remain bound until fully paid.

Following this language, the Murphys' long-time friends, the Defendants Kent and Cheryl Mays, each signed the Nonneman Note as "Guarantor."

3

After execution of the TSB Note, Mr. Murphy made interest payments due on the TSB Note directly to TSB, the total amount of which is not in the record. He made no payments directly to the Nonnemans. The Nonnemans made no payments on the TSB Note prior to its maturity on November 28, 2007. It is unclear whether the Mays have made any payments.

On the date that the TSB Note matured, it was renewed for the first time with the Nonnemans in the amount of $2,500,000.00 at a rate of 8.25%. Neither the Murphys nor the Mays participated in this renewal.

On October 31, 2008, TSB entered into a Loan Participation Agreement with American Founders Bank ("AFB"). Per the terms of the Agreement, TSB agreed to transfer all its rights in the TSB Note to AFB and AFB allowed TSB to service the TSB Note on AFB's behalf.

On November 28, 2009, the Nonnemans renewed the TSB Note for a second time with a balance of $2,497,368.00. Once again, neither the Murphys nor the Mays participated in the renewal process. That same day, TSB entered into another Loan Participation Agreement with AFB that allowed TSB to service the TSB Note and act as a collection agent for AFB.

AFB ultimately became frustrated with TSB's collection efforts. Thus, on September 9, 2010, AFB served a written notice on TSB and the Nonnemans that AFB would proceed to collect directly on the TSB Note.

AFB then took action to make MSC Management, who received the proceeds of the TSB Loan, a co-maker and "re-document the [TSB] loan." On September 27, 2010, AFB drafted a new note in favor of AFB to include MSC Management as a co-maker (the "First AFB Note"). The First AFB Note named the Nonnemans as the borrowers of $2,497,368.00, but was signed by both the Nonnemans and Dallas Murphy on behalf of MSC Management as borrowers. The First AFB Note further required $57,000.00 to be paid to bring the account current. Unlike the prior renewals of the TSB Note, the First AFB Note was not stamped or titled as a "renewal."

4

At the time that AFB, the Nonnemans, and MSC Management via Mr. Murphy executed the First AFB Note, AFB was apparently unaware that that MSC Management had previously given a mortgage to secure the TSB Note.   Thus, in addition to asking the Nonnemans and MSC Management to sign the First AFB Note, AFB also required MSC Management to grant a mortgage on the Real Property to AFB (the "AFB Mortgage").  AFB also required the loan to be "re-documented," including a resolution by MSC Management to borrow funds, a Disbursement Request and Authorization, an Agreement to Provide Insurance, W-9 Taxpayer Requests, and a Notice of Final Agreement.

Before the AFB Mortgage was recorded, AFB received an updated title opinion dated September 29, 2010 (two days following execution of the AFB loan documents) revealing the prior TSB Mortgage, as well as several subsequent liens recorded on the Real Property. Fearing that recording the AFB Mortgage would cause AFB to lose its priority position based on the TSB Mortgage, AFB drafted a new note (the "Second AFB Note") and asked the Nonnemans and Mr. Murphy on behalf of MSC Management to sign it.  Unlike the prior AFB Note, the Second AFB Note is entitled "Renewal Promissory Note."  The Second AFB Note further contains a specific modification provision:

> It is the expressed agreement of the parties hereto to modify the Original Note [as defined Promissory Note dated November 28, 2007] so as to include MSC Management, LLC, by and through its duly authorized Member, Dallas Murphy, Jr., and Arthur J. Nonneman and Kathleen A. Nonneman as Borrower.  Said Original Note to be duly modified to likewise include American Founders Bank, assignee and/or successor in interest of said rights and obligations of Town Square Bank in the Original Note, as Lender hereinafter.

The Second AFB Note also includes language stating that "it is the express agreement of the parties hereto that this Extension, Modification and Renewal of the Original Note SHALL NOT act as a novation of any terms, obligations and/or agreements of said Original Note."  The Nonnemans and Mr. Murphy on behalf of MSC Management signed the Second AFB Note and

5

AFB then backdated the Second AFB Note to the date of the First AFB Note. American Founders then destroyed the First AFB Note, the AFB Mortgage, and the related loan documents.

In November 2010, the Nonnemans and MSC Management defaulted on the Second AFB Note. On November 12, 2010, AFB filed a complaint against the Nonnemans and MSC Management in Fayette Circuit Court. On April 13, 2011, the Fayette Circuit Court entered an Agreed Judgment in favor of AFB in the amount of $2,497,368.00 plus the interest rate of 7.75% from September 27, 2010 until January 5, 2011, and interest at the rate of 9.75% thereafter until paid in full.

On June 22, 2011, the Nonnemans filed for Chapter 11 bankruptcy. On November 14, 2011, AFB filed a Proof of Claim (POC #3-1) for $2,497,368.00. A Chapter 11 Plan was confirmed on February 23, 2012. The Real Property was sold at auction for $490,000.00 and on March 12, 2012, AFB reduced its Proof of Claim to $2,007,368.00 (POC #3-2).

On December 1, 2011, the Nonnemans filed this adversary proceeding against the Murphys as borrowers and the Mays as guarantors pursuant to the Nonneman Note. The Nonnemans seek to recover based on two separate counts: (1) breach of contract; and (2) turnover of the money due based on the breach (alleged to be $2,944,074.13 through November 15, 2011, plus interest accruing thereon at a rate of 9.75%, as well as attorneys' fees and costs) as property of the estate. The Mays answered generally denying the allegations and cross-claimed against the Murphys as the primary obligors. The Murphys, proceeding *pro se*, also filed an answer to the Nonnemans' Complaint but did not reply to the Mays' cross-claim.

The Nonnemans and the Mays have now filed cross-motions for summary judgment. The Nonnemans move for summary judgment on both counts of the Complaint based on the Defendants' liability under the Nonneman Note. The Nonnemans argue the plain unambiguous language of the Nonneman Note obligates the Defendants to pay them pursuant to the terms of

6

the Nonneman Note as promised.  In so moving, the Nonnemans do not discuss or produce evidence related to the outstanding balance due on the Nonneman Note, the amount of damages allegedly sustained by the Nonnemans as a result of the breach, or their request for turnover of money recovered as property of the bankruptcy estate.

The Mays move for summary judgment solely on the Nonneman's claims against them arguing that there are no genuine issues of material fact and summary judgment is appropriate because the execution of the First AFB Note resulted in a novation of the TSB Note, thereby discharging the Mays of their guaranty on the Nonneman Note.  The Mays also argue that the Nonneman Note is a guaranty rather than a promissory note as labeled, and, as a guaranty, it is unenforceable pursuant to Kentucky's Guaranty Statute, K.R.S. §371.065.  Finally, the Mays argue that their purported obligation under the Nonneman Note lacks consideration.

The Murphys have not filed a motion for summary judgment, but have participated in the briefing and the arguments of the issues herein.

The Court heard oral arguments on these issues on July 24, 2012 and the matter was submitted.  These issues are now ripe for determination.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (E) and (O).  Venue is proper pursuant to 28 U.S.C. §1409.

## Analysis

There being no genuine issues of material fact related to the creation and execution of the Nonneman Note, the Court must first determine whether the parties entered into an enforceable contract by executing the Nonneman Note to determine the Defendants' liability, if any, on the Note.   This argument revolves around a dispute as to the characterization and effect of the Nonneman Note.  The Plaintiffs argue that the Nonneman Note is a simple

7

promissory note requiring the Murphys and Mays to pay the Nonnemans a total of $2,500,000.00 in consideration for the Nonneman's loan with TSB on behalf of MSC Management. In contrast, the Mays argue that the Nonneman Note is not a promissory note at all, but a guaranty that does not satisfy Kentucky's Guaranty Statute, K.R.S. §371.065 and lacks consideration to support their guaranty. The Court finds that the Nonnemans' interpretation to be correct.

The construction and interpretation of a contract is a matter of law. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998). Under Kentucky law, a contract is only ambiguous if it is susceptible to multiple or inconsistent interpretations. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003); *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. App. 1994). If an ambiguity exists, the court must discern the intention of the parties from the contract as a whole considering the "subject matter of the contract, the situation of the parties and conditions under which the contract was written…" *McMullin v. McMullin*, 338 S.W.3d 315, 320 (Ky. App. 2011) (*quoting Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (Ky. 1954)). However, "[a]bsent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002). Stated differently, the written terms of the contract will be strictly enforced. "The fact that one party may have intended different results….is insufficient to construe a contract at variance with its plain and unambiguous terms.'" *Id*.

The Nonneman Note is unambiguous and, on its face, a promissory note with a guaranty. There are significant differences between a promissory note and a guaranty. A promissory note is a written, unconditional promise to pay another a certain sum of money at a certain time, or at time which must certainly arrive. *Aetna Oil Co. v. Glenn*, 53 F. Supp. 961, 965 (W.D. Ky. 1944). A guaranty is an agreement whereby the guarantor promises to protect the obligee from loss for a debt resulting from the failure of a principal obligor to honor its own

8

obligation. *See Huntington Nat'l Bank v. Porter*, 2004 Ky. App. Unpub. LEXIS 722, *8 (Ky. App. Aug. 27, 2004). The plain language of the Nonneman Note shows that it is an unconditional promise by the Murphys, as the principal obligors on the Note, to pay the Nonnemans a sum of $2,500,000.00. The Note is entitled "Promissory Note." It recites consideration that the undersigned agrees to pay $2,500,000.00 "notwithstanding any extension, renewal, modification, waiver or other indulgency by the holder or upon discharge or release of any obligor hereunder or to this note, or upon the exchange, substitution or release of any collateral granted as security for the note." The Nonneman Note further explicitly states that the "undersigned" executes "this note as principals and not as sureties." The Murphys' signatures, as borrowers, follow this language. The language of the Nonneman Note makes clear it is a promissory note between the Nonnemans and the Murphys; there can be no other interpretation.

The Nonneman Note also contains a separate section entitled "Guaranty." It is there that the Mays signed as "guarantor" and agreed to "jointly and severally guaranty the prompt and punctual payment of all moneys due under the aforesaid note and agree to remain bound until fully repaid." This section, contrasted with the language of the Nonneman Note immediately prior to the Murphys' signature, establishes a guaranty of the Murphys' payment to the Nonnemans.

The Mays argue that as a guaranty, the Nonneman Note fails to satisfy K.R.S. §371.065, which states:

> No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates.

9

According to the Mays, the Nonneman Note fails to identify a guaranty termination date on the face of the agreement, a required element. But K.R.S. §371.065 only applies when the guaranty is not written on the instrument being guaranteed. Here, the Mays' Guaranty is on the Nonneman Note and guarantees the Murphys' obligation to the Nonnemans. Thus, K.R.S. §371.065 is inapplicable.

Finally, the Mays argue that their obligation, as a guaranty, lacks consideration and cannot be enforced. The Court agrees that the Nonneman Note is only enforceable as against the Mays if the guaranty is founded upon sufficient consideration. Consideration requires a bargained for exchange of a performance or return promise. *See* RESTATEMENT (SECOND) OF CONTRACTS §71 (1981). Here, the Nonneman Note recites the consideration as follows:

> FOR VALUE RECEIVED, the undersigned hereby jointly and severally promise to pay to the order of Art & Kathy Nonneman & Town Square Bank, the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00), together with interest thereon at the rate of = to Bank % per annum on the unpaid balance. Said sum shall be paid in the manner following: Terms and conditions to exactly match those of Nonneman's (Town Square Bank Note) matching the above date.

This consideration does not refer to the Mays. But because there is consideration as between the Nonnemans and the Murphys, as the primary obligors, there is sufficient consideration for the Mays' guaranty as well.

Typically, the requirement of consideration for secondary obligations is the same for contracts generally. *See* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY §9 (1996). But a secondary obligation does not fail for lack of consideration if "the underlying obligation is supported by consideration and the later creation of the secondary obligation was part of the exchange for which the obligee bargained." *Id.* Thus, "the consideration supporting the underlying obligation will also support the secondary obligation and no separate consideration is necessary." *Id.* at cmt. a. Kentucky law is in accord:

> There must be some consideration to support the guaranty. The execution of the note implies a consideration, and so does the execution of the guaranty; but that implication may upon a proper plea be disproved. If there be any consideration for the execution of the note, that consideration is sufficient to support the guaranty; if there be no consideration for the note, it seems to us that the guarantors may plead and prove that fact, and thus defeat the action of the creditor, unless the guarantors have received consideration direct to them from the creditor.

*Walter A. Wood Mowing and Reaping Machine Co. v. Land*, 32 S.W. 607, 608 (Ky. 1895). *See also Smith v. Bethlehem Sand & Gravel Company*, 342 S.W.3d 288, 294 (Ky. App. 2011). There is no dispute that the Murphys received consideration in exchange for their promise to pay the Nonnemans $2,500,000.00. Thus, because the Nonneman Note is supported by sufficient consideration as between the Murphys and Nonnemans, there is sufficient consideration to support the Mays' guaranty.

Finally, the Mays argue that the First AFB Note resulted in a novation of the Nonnemans' obligation to TSB and/or AFB and the novation therefore extinguished their guaranty. Whether the execution of the First AFB Note resulted in a novation of the Nonnemans' obligation to TSB and/or AFB via the TSB Note is irrelevant. The Nonneman Note stands on its own and is an enforceable promissory note regardless of whether the TSB Loan was paid by the Nonnemans or not. Any renewal or novation of the TSB Note does not affect the terms of the Nonneman Note, which are merely supplied by the original November 28, 2005 TSB Note. The Mays' guaranty is a guaranty of the Nonneman Note, not the TSB Note. The issue of novation of the TSB Note therefore has no effect on the enforceability of the Nonneman Note as against the Mays as guarantors.

The undisputed evidence shows the Plaintiffs and Defendants entered into an enforceable promissory note in which the Murphys promised to pay $2,500,000.00 to the Nonnemans and the Mays guaranteed the Murphys' obligation to the Nonnemans. The evidence is undisputed that neither the Murphys nor the Mays satisfied the Nonneman Note

upon maturity.  Summary judgment, in part, on the Nonnemans' breach of contract count is appropriate.

Whereas summary judgment on the Defendants' liability for breach of contract under the Nonneman Note is appropriate, the Court cannot enter a judgment amount or summary judgment on the Nonnemans' second count, turnover of property of the estate, where there is no discussion in the briefs or any evidence of the damages the Nonnemans' allegedly sustained as a result of the breach.  The record is devoid of an accounting of the Note or facts to support the amounts paid, if any, towards the Nonneman Note and/or the amount currently due under the Nonneman Note.  Thus there remain genuine issues of material fact to be resolved as to the amount of damages.

### Conclusion

Based on the foregoing, the Court shall GRANT the Plaintiff Nonnemans' Motion for Summary Judgment [Doc. 54] on the Defendants' liability to the Nonnemans for breach of contract under Count I of the Complaint, but DENY summary judgment as to the amount of damages recoverable, and DENY the Defendant Mays' Motion for Summary Judgment [Doc. 55].  A separate order shall be entered accordingly.


Copies To:

Matthew Bunch, Esq.

Chrisandrea Turner, Esq.

Dallas and Cheryl Murphy, *pro se*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
***The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.***



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge
Dated: Thursday, September 13, 2012
(tnw)**